ROSNER, BARRY & BABBITT, LLP
Hallen D. Rosner, SBN 109740
Jeffrey L. Le Pere, SBN 201787
10085 Carroll Canyon Road, Suite 100
San Diego, California 92131
Telephone: (858) 348-1005
Facsimile:  (858) 348-1150
*hal@rbblawgroup.com*
*jeff@rbblawgroup.com*

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATE CELENTANO, an individual; | CASE NO. |
| Plaintiff, | **COMPLAINT FOR:** |
| v. | 1. VIOLATION OF THE SONG-BEVERLY CONSUMER WARRANTY ACT, CIVIL CODE § 1790 ET SEQ. |
| FORD MOTOR COMPANY, a corporation; and DOES 1 through 10, inclusive, | 2. VIOLATION OF MAGNUSON MOSS WARRANTY ACT |
| Defendants. | 3. VIOLATION OF THE UNFAIR COMPETITION LAW, BUS. & PROF. CODE § 17200 ET SEQ. |
| | **(JURY TRIAL REQUESTED)** |

Plaintiff, KATE CELETANO, hereby alleges the following against Defendant FORD MOTOR COMPANY ("FORD") on information and belief, formed after a reasonable inquiry under the circumstances:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because the action alleges claims pursuant to 15 U.S.C. § 2310, the Magnuson Moss Warranty Act. Plaintiff is natural persons with a claim that exceeds the amount in

1
COMPLAINT

1  controversy of $50,000, pursuant to 15 U.S.C. § 2310(d)(3)(B).   This court also has
2  diversity jurisdiction, pursuant to 28 U.S.C § 1332.
3      2.   This Court has supplemental jurisdiction over the California state law claims,
4  pursuant to 28 U.S.C. § 1367.  Venue is appropriate in this judicial district because the
5  Defendants are individuals, associations, or corporations that are either authorized to
6  conduct or, in fact, do conduct substantial business in the State of California, County of
7  San Mateo.
8      3.   Plaintiff, KATE CELETANO has and does opt out of any class action,
9  including *Vargas v. Ford Motor Co., Case No. 2:12-cv-08388-AB-FFM*.

## GENERAL ALLEGATIONS

11      4.   Plaintiff, KATE CELETANO is an individual who, at the time of the
12  transaction at issue, resided in the City of Burlingame, County of San Mateo, State of
13  California.
14      5.   Defendant, Ford Motor Company ("Ford") is a corporation, doing business
15  through its dealership and agent Livermore Auto Group in the City of Livermore, County
16  of Alameda, State of California and Serramonte Ford, City of Serra Monte, County of San
17  Mateo, State of California.
18      6.   Plaintiff does not know the true names and capacities, whether corporate,
19  partnership, associate, individual or otherwise, of Defendants sued herein as Does 1
20  through 75, inclusive, and thus name them under the provisions of Section 474 of the
21  California Code of Civil Procedure. Defendants Does 1 through 10, inclusive, are in some
22  manner responsible for the acts, occurrences and transactions set forth herein, and are
23  legally liable to Plaintiff and/or they are the alter-ego of the Defendants named herein.
24  Plaintiff will set forth the true names and capacities of the fictitiously named Defendants
25  together with appropriate charging allegations when ascertained.
26      7.   All acts of corporate employees, as alleged, were authorized or ratified by
27  an officer, director, or managing agent of the corporate employer.
28  ///

8. Each Defendant, whether actually or fictitiously named herein, was the principal, agent (actual or ostensible), co-conspirator, or employee of each other Defendant and in acting as such principal or within the course and scope of such employment, agency, or conspiracy, took some part in the acts and omissions hereinafter set forth by reason of which each Defendant is liable to the Plaintiff for the relief prayed for herein.

## SUMMARY OF FACTS

9. On November 30, 2012, Plaintiff purchased a 2012 Ford Focus, VIN: 1FAHP3K27CL164157 ("SUBJECT VEHICLE") from Livermore Auto Group.

10. Ford provided an express warranty of 3 years/36,000 miles bumper-to-bumper and 5 years/60,000 miles for the powertrain. Because the Vehicle was covered under Ford's express manufacturer's warranty, an implied warranty of merchantability accompanied the sale of the vehicle to Plaintiff, as a matter of law.

*11.* The Ford express warranty covers any defect in the Vehicle's design. *See Ford Warranty Manual, page 9*; *also Daniel v. Ford Motor Company*, 806 F.3d 1217, *1224-25 (9th Cir. 2015).*

12. Plaintiff has performed all things agreed to and required of Plaintiff under the purchase agreement, warranty, and statute except as may have been excused or prevented by the conduct of defendant.

13. The 2012 Ford Focus was equipped with a transmission that is called a Dual PowerShift 6 Speed Transmission ("DPS6").

14. The 2012 Ford Focus had various defects and nonconformities. Most notably, Plaintiff's Ford experienced hesitation upon acceleration, jerking, and other known problems and defects that are commonly linked with vehicles equipped with a DPS6.

15. The transmission defects are not limited to the 2012 Ford Focus, but to other Ford vehicle models using the DPS6 transmission as well. Ford has installed the same transmission in the Ford Fiesta and Ford Focus for the 2011 through 2016 model years.

Ford continues to market these vehicles without disclosure to consumers they have defective transmissions.

16. In fact, Plaintiff is informed and believes that Ford has attempted to even cover up the known defects with design in the DPS6 by publishing a document attempting to define what it considered to be normal operating characteristics. A true and correct of this document is attached herewith as Exhibit A.

17. Plaintiff is informed and believes that Ford the information about the DPS6, which was installed on SUBJECT VEHICLE, not to the sales personnel at Antelope Valley Ford, but only to the service department.

18. Had the information, contained on Exhibit A, been provided to Plaintiff prior to sale, Plaintiff would not have purchased SUBJECT VEHICLE.

19. Plaintiff, accordingly, is informed and believes that Ford has failed to properly train dealership personnel as to the defect in design with the DPS6.

20. Plaintiff is informed and believes that numerous consumers have made similar complaints concerning the performance of their Ford Fiesta and Ford Focus vehicles with the DPS6 Power Shift transmission, including the 2012 model.

21. Ford has attempted to implement various repair protocols, procedures, and updates in order to conform the DPS6 to its warranty. These include the following:

    a. <u>Field Service Actions</u>:  FSA 11B31; FSA 11T02; FSA 12B37; FSA14M01; FSA14M02; and FSA15B22

    b. <u>Special Service Messages</u>:  SSM 44852; SSM 44828; SSM 44785; SSM 44707; SSM 44161; SSM 12053; and SSM 22550

    c. <u>Technical Service Bulletins</u>:  TSB 14-0047; TSB 14-0047A-E; TSB 14-0131; TSB 14-0197; TSB 15-0083; TSB 15-0043; TSB 15-0017; TSB 14-0066; TSB 12-4-6; TSB 11-12-13; TSB 13-9-4; TSB 15-0043; TSB 15-0090; TSB 15-0120; TSB 15-0121; TSB 13-4-5; and TSB 13-4-5c

22. Shortly after purchase, Plaintiff experienced jerking, hesitating upon acceleration, and other issues with how SUBJECT VEHICLE operated.

23. Plaintiff is informed and believes that the issue with the DPS6 is not only defects related to the mechanical parts and design, but also defective software has been utilized to operate the Transmission Control Module (TCM).

24. Plaintiff is informed and believes that not only does the DPS6 have a defect in the design, but is also plagued with defective software. The defective software is covered by Ford's warranty.

25. In August 2015, Ford published Customer Satisfaction Program 15B22. A true and correct copy is attached herewith as Exhibit B.

26. Customer Satisfaction Program 15B22 was intended to provide a remedy to the DPS6 so that Ford could once and for all conform vehicles equipped with a DPS6 to the warranty.

27. However, Customer Satisfaction Program 15B22 has failed.

28. Plaintiff has continued to have ongoing problems with defects with the DPS6.

29. Even after Ford knew that Customer Satisfaction Program 15B22 failed, Ford subsequently published another TSB 16-0129.

30. Plaintiff is informed and believes that Ford cannot repair the vehicle. Any repair performed is nothing more than a stop gap.

31. Plaintiff is informed and believes that, pursuant to the federal TREAD Act, 49 U.S.C. § 30101, et seq., Ford had a duty to prepare and file a report(s) with the National Highway Traffic Safety Administration (NHTSA), and/or other governmental agencies, following Customer Satisfaction Program 15B22, as well as, the other two (2) Customer Satisfaction Programs related to the Dual Power Shift 6 Speed Transmission.

32. Plaintiff is informed and believes that Ford is a Group 1 manufacturer under the TREAD Act.

33. Plaintiff is informed and believes that as a Group 1 Manufacturer under the TREAD Act, Ford is required to regularly submit reports and statistics to NHTSA.

34. Plaintiff is informed and believes that Ford has had an obligation to submit

reports to NHTSA following complaints consumers in California have made about Ford vehicles equipped with the DPS6.

35. Plaintiff is informed and believes that pursuant to 49 USC § 30166(m)(3)(A) Ford has submitted reports to NHTSA involving warranty reports related to Ford vehicles equipped with the Dual Power Shift 6 Speed Transmission.

36. Plaintiff is informed and believes that pursuant to 49 USC § 30166(m)(3)(B), Ford has submitted reports to NHTSA involving consumer complaints related to Ford vehicles equipped with the Dual Power Shift 6 Speed Transmission.

37. Plaintiff is informed and believes that Ford submitted reports to NHTSA concerning Ford vehicles equipped with the DPS6 in accordance with 49 CFR 573.6.

38. Plaintiff is informed and believes that NHTSA has not deemed any report that Ford has submitted pursuant to 49 CFR 573.6 related to vehicles equipped with the DPS6 to be confidential.

39. Plaintiff is informed and believes that Ford submitted reports to NHTSA concerning Ford vehicles equipped with the DPS6 in accordance with 49 CFR 579.5(b).

40. Plaintiff is informed and believe that NHTSA has not deemed any report that Ford has submitted pursuant to 49 CFR 579.5(b) related to vehicles equipped with the DPS6 to be confidential.

41. Plaintiff is informed and believes that pursuant to the TREAD Act, Ford must report the numbers of consumer complaints they receive that are related to problems with certain specified components and systems that occurred in the United States.

42. Plaintiff is informed and believes that NHTSA has not deemed any such report that related to vehicles equipped with the DPS6 to be confidential.

43. Plaintiff is informed and believes that pursuant to the TREAD Act, Ford must report the number of warranty claims (adjustments for tire manufacturers), including extended warranty and good will, they receive that are related to problems with certain specified components and systems that occurred in the United States. Plaintiff is informed and believes that NHTSA has not deemed any such report that related to vehicles

equipped with the DPS6 to be confidential.

44. Plaintiff is informed and believes that pursuant to the TREAD Act, Ford must report the total number of field reports they receive from the manufacturer's employees, representatives, and dealers, and from fleets, that are related to problems with certain specified components and systems that occurred in the United States. In addition, manufacturers must provide copies of certain field reports received from their employees, representatives, and fleets, but are not required to provide copies of reports received from dealers. Plaintiff is informed and believes that NHTSA has not deemed any such report that related to vehicles equipped with the DPS6 to be confidential.

45. Plaintiff is informed and believes that pursuant to 49 USC § 30166(m)(3)(a), Ford has submitted reports to NHTSA involving warranty reports related to 2012 Ford Focus, equipped with the DPS6. Plaintiff is further informed and believes that these reports will establish an existence of a defect in design in SUBJECT VEHICLE.

46. Plaintiff is informed and believes that pursuant to 49 USC § 30166(m)(3)(B), Ford has submitted reports to NHTSA involving consumer complaints related to 2012 Ford Focus, equipped with the DPS6. Plaintiff is further informed and believes that these reports will establish an existence of a defect in design in SUBJECT VEHICLE.

47. Plaintiff is informed and believes that Ford knows that it cannot conform vehicles, including the Vehicle, equipped with a DPS6 transmission to its warranty.

48. As of today, the SUBJECT VEHICLE still shudders upon acceleration. This is a defect that substantially impairs the use, value or safety of the vehicle to Plaintiff.

49. Plaintiff is informed and believes that it is impossible to conform the Vehicle to warranty.

50. Plaintiff is informed and believes that Ford has developed protocols designed to willfully circumvent and avoid compliance with its statutory duties to "promptly" repurchase vehicles that have not been conformed to its warranty within a reasonable opportunity to repair.

///

51. Prior to retaining counsel, Plaintiff demanded the Ford repurchase SUBJECT VEHICLE, pursuant to California and federal law. Ford denied this request. Plaintiff is informed and believes that this denial was willful violation of California law. A true and correct of the denial letter from Ford is attached herewith as Exhibit C.

52. Ford's willful failure to repurchase the vehicle in response to Plaintiff's demand entitles Plaintiff to recover a civil penalty pursuant to Civil Code § 1794(c).

**FIRST CAUSE OF ACTION**
**Violation of the Song-Beverly Consumer Warranty Act, Civil Code §1790 et seq.**
**(As to Ford Motor Company)**

53. Plaintiff incorporates by reference each and every allegation set forth in paragraphs 1 through 52, inclusive, of this Complaint.

54. Under the Song-Beverly Consumer Warranty Act ("Song-Beverly") Civil Code § 1790 et seq., the SUBJECT VEHICLE constitutes a "consumer good" purchased primarily for family or household purposes and Plaintiff has used the SUBJECT VEHICLE primarily for those purposes.

55. Plaintiff is a "buyer" of consumer goods under Song-Beverly.

56. Ford is a "manufacturer" and/or "distributor" under Song-Beverly.

57. The sale of the vehicle to Plaintiff was accompanied by an express warranty and an implied warranty that the SUBJECT VEHICLE was merchantable. The sale of the Vehicle to Plaintiff was also accompanied by Ford's implied warranty of fitness.

58. The foregoing defects and nonconformities to warranty manifested themselves within the applicable express warranty period. The nonconformities substantially impair the use, value, and/or safety of the SUBJECT VEHICLE.

59. Plaintiff delivered the SUBJECT VEHICLE to Ford's authorized repair facilities for repair of the nonconformities on numerous occasions.

60. Ford and its authorized repair facilities were unable to conform the SUBJECT VEHICLE to the applicable express and implied warranties after a reasonable number of attempts.

///

61. The implied warranty of merchantability has been breached in that, among other matters: (1) the Vehicle would not pass without objection in the trade because it is incapable of safe operation for use on the roads or highways and was sold with serious defects, including, but not limited to, a faulty transmission; and, (2) is unfit for the ordinary purpose for which such vehicles are intended to operate and function.

62. Plaintiff justifiably revoked acceptance of the SUBJECT VEHICLE under Song-Beverly.

63. Under Song-Beverly, Plaintiff is entitled to reimbursement of the purchase price paid for the SUBJECT VEHICLE.

64. Notwithstanding Plaintiff's entitlement, Ford has failed to refund the price of the SUBJECT VEHICLE or replace the SUBJECT VEHICLE as required by Song-Beverly.

65. By failing to remedy the defects as alleged above, or to issue a refund or replacement, Ford is in breach of its obligations under Song-Beverly.

66. Plaintiff is entitled to justifiably revoke acceptance of the SUBJECT VEHICLE under Song-Beverly.

67. By requesting that Ford take the SUBJECT VEHICLE back, Plaintiff revoked their acceptance of it.

68. Under Song-Beverly, Plaintiff is entitled to reimbursement of the purchase price paid for the Vehicle.

69. Plaintiff is entitled to all incidental, consequential and general damages resulting from Ford's failure to comply with its obligations under Song-Beverly.

70. Plaintiff is entitled to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses, including attorneys' fees, reasonably incurred in connection with the commencement and prosecution of this action.

71. Ford willfully violated Song-Beverly. As a result, Plaintiff is entitled to a civil penalty up to two times their actual damages.

///

**SECOND CAUSE OF ACTION**
**Violation of Magnuson Moss Warranty Act**
**(Against All Defendants)**

72. Plaintiff incorporates herein each and every allegation set forth in paragraphs 1 through 71 of this Complaint, as though fully set forth herein.

73. Plaintiff is a "consumer" as defined in Magnuson-Moss Warranty Act (hereinafter "Mag-Moss"), 15 USC Section 2301(3).

74. Defendant Ford is a "supplier" and "warrantor" as defined in Mag-Moss, 15 USC Sections 2310(4) and (5).

75. The SUBJECT VEHICLE is a "consumer product" as defined in Mag-Moss, 15 USC § 2301(1).

76. Ford provided Plaintiff with a "written warranty," as defined in Mag-Moss, 15 USC § 2301(6).

77. Under California an "implied warranty of merchantability" was created in connection with sale of the Vehicle, as defined in Mag-Moss, 15 USC § 2301(7).

78. Defendant's failure to provide Plaintiff with the Vehicle substantially free of defects, as warranted, constitutes breach of the Express Warranty and implied warranty covering the Vehicle, and hence violation of Mag-Moss.

79. Plaintiff has provided defendants an opportunity cure.

80. Plaintiff has complied with all of the obligations, as agreed to and required under the RISC, except as may have otherwise been excused or prevented by the Defendant.

81. Plaintiff is informed and believes that Ford is unable to conform the Vehicle to the applicable warranties, after having provided Defendant a reasonable opportunity to cure the defects.

82. For this reason, Ford's warranty is deceptive under Magnuson Moss. See, 15 USC 2310(C)(2):

> For the purposes of this subsection, the term "deceptive warranty" means (A) a written warranty which (i) contains an affirmation, promise, description, or representation which is

either false or fraudulent, or which, in light of all of the circumstances, would mislead a reasonable individual exercising due care; or (ii) fails to contain information which is necessary in light of all of the circumstances, to make the warranty not misleading to a reasonable individual exercising due care; or (B) a written warranty created by the use of such terms as "guaranty" or "warranty", if the terms and conditions of such warranty so limit its scope and application as to deceive a reasonable individual.

83. As a direct and proximate result of the act and omissions of the Defendants, Plaintiff has been damaged in an amount which will be shown according to proof at the time of trial.

84. Further, under Mag-Moss, 15 USC Section 2310(d)(2), Plaintiff is entitled to recover as part of the judgment, costs and expenses of the suit, including reasonable attorneys' fees. Plaintiff has incurred and continue to incur legal fees and costs and expenses in connection with the commencement and prosecution of this action.

## THIRD CAUSE OF ACTION
**Violation of the Unfair Competition Law, Bus. & Prof. Code §17200, et seq.
(As to Ford Motor Company)**

85. Plaintiff incorporates by reference each and every allegation set forth in paragraphs 1 through 84, inclusive, of this Complaint.

86. Ford has committed acts in violation of the Unfair Competition Law ("UCL"), as defined by Business and Professions Code §17200, *et seq*. as set forth more fully above. Ford has engaged in a course of conduct of systematically violating the consumer laws in this State prohibiting the commitment of deceptive practices, including the laws of fraud and deceit, and the various prohibitions contained in Song-Beverly and the Consumers Legal Remedies Act.

87. The harm to Plaintiff outweighs the utility of Ford's policies and practices particularly considering the available alternatives, and that Ford's policies and practices are immoral, unscrupulous, unethical and against public policy. Ford's policies and practices consequently constitute an "unfair" business act or practice within the meaning of the UCL.

///

88. Ford's deceptive policies and practices as set forth above also are likely to and/or have deceived Plaintiff. Thus, Ford has also engaged in "fraudulent" business practices.

89. Ford violated the UCL by designing, manufacturing, and selling the DSP6 transmission on Ford Focus and Fiesta models (2011 to 2016) that are inherently defective. Upon suffering repeated transmission problems with these vehicles, consumers, including Plaintiff, demanded that Ford repair their vehicle or conform the vehicle to the warranty. Ford's warranty on the DPS6 transmission has proved to be illusory, and Ford further violated the UCL through violating its express warranty by failing to repair the Vehicle so as to conform to applicable express warranties after several attempts at repair.

90. Ford has engaged in, and continues to engage in, the same form of deceptive acts and practices.

91. Ford's unlawful, unfair and fraudulent business practices present a continuing threat to Plaintiff and others in that Ford will continue utilizing similar policies and practices.

92. Business and Professions Code §17203 provides that Plaintiff is entitled to an order enjoining Ford from engaging in acts or practices that violate Business and Professions Code §17200, as well as providing for equitable monetary relief so as to preclude the retention of all ill-gotten monies by Ford or so as to restore any monies wrongfully obtained by Ford to Plaintiff. Plaintiff have lost money and suffered injury in fact as a result of Ford's illegal conduct. Plaintiff seek such equitable monetary relief, and an order enjoining Ford from engaging in the acts and practices set forth in this Complaint, imposing an asset freeze or constructive trust over such monies as the Court deems appropriate, as well as compelling a corrective informational campaign to correct the misperceptions in the marketplace created by such conduct.

**WHEREFORE**, Plaintiff prays for judgment as follows:

1. For damages according to proof at trial;
2. For rescission of the purchase contract;

3. For Civil Penalty as provided by statute;

4. For incidental and consequential damages according to proof at trial;

5. For the equitable and injunctive relief permitted under Civil Code § 1780 and Business & Professions Code § 17200;

6. For pre-judgment interest at the legal rate;

7. For reasonable attorneys' fees and costs of suit as permitted by law (including, but not limited to, Civil Code §§ 1780(e), and 1794, and Code of Civil Procedure § 1021.5);

8. Relief under Business & Professions Code § 17200 as limited as provided by law; and

9. For such other and further relief as the Court deems just and proper under the circumstances.

Dated: September 1, 2017        ROSNER, BARRY & BABBITT, LLP

By:  /s/ Jeffrey L. Le Pere
     Hallen D. Rosner
     Jeffrey L. Le Pere
     Attorneys for Plaintiff